UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DIRK P. HARVEY,

                                        Plaintiff,

v.                                                          6:02-CV-1329
                                                            (FJS/GHL)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

OLINSKY & DI MARTINO                            HOWARD D. OLINSKY, ESQ.
*Counsel for Plaintiff*
186 West First Street
Historic First National Bank
Oswego, New York 13126

HON. GLENN T. SUDDABY                           WILLIAM H. PEASE, ESQ.
United States Attorney for the                  Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

## REPORT AND RECOMMENDATION[1]

I.       BACKGROUND

         A.       Procedural History

         On May 31, 1995, Plaintiff filed an application for disability insurance benefits.  (T. at

42-44, 187.)  In a decision dated March 6, 1996, Administrative Law Judge ("ALJ") John P.

_____

         [1]  This matter was referred to me for report and recommendation by the Honorable Frederick J.
Scullin, Jr., Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of
New York Local Rule 72.3.

Chwalek found that Plaintiff was disabled and awarded benefits.  (T. at 182-186.)

In a notification dated April 5, 2001, the Commissioner informed Plaintiff that due to an improvement in his health, he was no longer considered disabled, and thus no longer eligible to receive benefits.  (T. at 197-199.)  Plaintiff requested reconsideration and a hearing was held before a Disability Hearing Officer ("DHO") on June 7, 2001.  (T. at 204.)  The DHO held that Plaintiff's condition had improved and therefore he was no longer disabled.  (T. at 216-223.)

Plaintiff requested a hearing before an ALJ which was held on October 10, 2001.  (T. at 27-38.)  On March 14, 2002, ALJ Joachim J. Volhard found that Plaintiff was not disabled.  (T. at 12-18.)  Plaintiff appealed to the Appeals Council and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on September 7, 2002.  (T. at 3-4.)  Plaintiff commenced this action on October 18, 2002.  (Dkt. No. 1.)

### B.    The Contentions

Plaintiff makes the following claims:

(A)    The ALJ did not follow the eight step sequential evaluation process mandated by 20 C.F.R. § 404.1594.  (Dkt. No. 11 at 10-12.)

(B)    The ALJ erred because he did not hold the Commissioner to its burden to show medical improvement.  (Dkt. No. 11 at 12-13.)

(C)    The ALJ erred in finding the Plaintiff capable of the full range of sedentary work, despite an inability to bend and frequent deficiencies in concentration.  (Dkt. No. 11 at 13-14.)

(D)    The ALJ erred in relying on the Medical-Vocational Guidelines to direct a finding of not disabled where there exists nonexertional impairments that pose additional and significant

2

limitations of function.  (Dkt. No. 11 at 14-15.)

(E)     The ALJ erred in relying on a Disability Hearing Officer's report of disability

hearing form as explanation of sufficient evidence to support the findings regarding the Plaintiff's

residual functional capacity.  (Dkt. No. 11 at 15-16.)

(F)     The ALJ erred when he found medical improvement.  (Dkt. No. 11 at 17-20.)

Defendant contends that the ALJ's decision is supported by substantial evidence and

therefore should be affirmed.  Dkt. No. 13.

## II.     APPLICABLE LAW

### A.     Standard for Cessation of Disability

After a claimant is found to be disabled, his entitlement is periodically reviewed, and

where his medical condition improves to the extent that he can engage in substantial gainful

activity, he will no longer be entitled to disability insurance benefits.  42 U.S.C. §§ 421(i), 423(f)

(2005); *Veino v. Barnhart*, 312 F.3d 578, 581 (2d Cir. 2002).  In order to terminate benefits, the

Commissioner must show by substantial evidence that a medical improvement has taken place,

that the medical improvement is related to the claimant's ability to work, and that the claimant is

currently able to engage in substantial gainful activity.  42 U.S.C. § 423(f)(1)(A) (2005); 20

C.F.R. § 404.1594 (2005).  A medical improvement is defined as "any decrease in the medical

severity" of an impairment.  20 C.F.R. § 404.1594(b)(1) (2004).  Any decrease must be based

upon changes in the symptoms, signs, and/or laboratory findings associated with the impairment.

*Id.*  To find medical improvement, the Commissioner must compare the prior and current

medical evidence to determine whether there has been any changes in signs, symptoms, and

laboratory findings associated with the claimant's impairment.  20 C.F.R. §§ 404.1594(b)(7),

3

(c)(1) (2005).

If there has been a medical improvement, the Commissioner must then determine whether the improvement is related to the claimant's ability to work.  20 C.F.R. § 404.1594(a) (2005).  A medical improvement will be related to the claimant's ability to work where it results in a decrease in the severity of the impairment present at the time of the most recent favorable medical decision and an increase in the claimant's functional capacity to perform basic work activities.[2]  20 C.F.R. § 404.1594(b)(3) (2005).  Basic work activities include abilities and attributes necessary to do most jobs, such as walking, standing, pushing, pulling, reaching, carrying, hearing, speaking, remembering, using judgment, dealing with changes, and dealing with both supervisors and fellow workers.  20 C.F.R. § 404.1594(b)(4) (2005).  Even where a medical improvement related to a claimant's ability to work has occurred, in most cases[3] the Commissioner must show that the claimant is able to engage in substantial gainful activity before he will be found no longer disabled.  20 C.F.R. § 404.1594(a).  In examining a claimant's ability to work, all current impairments must be considered.  20 C.F.R. § 404.1594(b)(5) (2005).

**B.**     **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) and *Serrano v. Barnhart*, Civ. No. 02-6372,

---

[2]  "The most recent favorable medical decision is the latest decision involving a consideration of the medical evidence and the issue of whether you were disabled or continued to be disabled which became final."  20 C.F.R. § 404.1594(b)(7) (2005).  In this case, the date an ALJ last determined that Plaintiff was disabled was March 6, 1996.  (T. at 182-186.)

[3]  The exceptions are set forth in 20 C.F.R. § 404.1594(e).

4

2003 WL 22683342, at *10-11 (S.D.N.Y. Nov. 14, 2003).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004); *Smith v. Apfel*, 69 F. Supp. 2d 370, 373 (N.D.N.Y. 1999) (Hurd, D.J.); and *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) and *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. at 229)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record

contains substantial support for the ALJ's decision.  42 U.S.C. § 405(g) and *Rutherford v.*

*Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.   THE PLAINTIFF

Plaintiff was born on April 10, 1966.  (Dkt. No. 11 at 3.)  He has a high school education

and his prior work experience includes employment as a shipping clerk, fence installer,

warehouse driver, and carpenter/laborer.  (*Id.*)  Plaintiff alleges that he suffers from exertional

impairments (chronic lower back pain) and non-exertional impairments (functioning

"intellectually in the low end of the Low Average range" and "deficiencies of concentration,

persistence or pace resulting in failure to complete tasks in a timely manner").  (Dkt. No. 11 at 6.)

## IV.   DISCUSSION

### A.   Whether the ALJ Followed the Eight Step Sequential Evaluation Process Mandated by 20 C.F.R. § 404.1594

Plaintiff argues that the ALJ erred in failing to follow the eight step sequential evaluation

process.

> The error is evident when the ALJ acknowledges a 5-step process
> [R 16] and when, having found medical improvement, stated the
> 'next issue to be resolved in considering whether the claimant
> continues to be disabled is whether the plaintiff's impairments
> would have precluded him from performing his previous work
> activity' [R 13].  This statement is contrary to 20 C.F.R. §404.1594,
> which requires a determination regarding past work at step '7', after
> residual functional capacity and the combined impact of all
> impairments have been considered.

(Dkt. No. 11 at 11.)  Defendant argues that the ALJ's analysis followed the eight step process,

even if he did not specifically recite each step.  (Dkt. No. 13 at 7.)  The Court agrees with

Defendant.  While the ALJ may not have discussed each step in the exact order set forth in 20

6

C.F.R. § 404.1594(f)(1)-(8), it is clear that he followed the eight step sequential evaluation.[4]

The first step in this process is to determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1594(f)(1).  The ALJ stated that "[t]here is no indication that he has engaged in any substantial gainful activity at any time since his established onset date," which satisfies step one.  (T. at 13.)  The ALJ next examined whether the claimant had a severe impairment or combination of impairments, which is step six of the eight step evaluation, and he found that Plaintiff's herniated disc and low back pain were severe.  (T. at 13, 17.)

The ALJ then stated:

> A current review of his medical reports shows that his back condition has improved and he does not currently fulfill requirements to meet or equal any medical listing.
>
> Considering the foregoing, the next issue to be resolved is whether there was medical improvement in the claimant's impairment as compared to the date he was heretofore found to be disabled and if so, whether such improvement can be related to the claimant's ability to work.

---

[4]  Step one asks whether a claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1594(f)(1) (2005).  Step two asks whether a claimant has an impairment or a combination of impairments which meets or equals the severity of a listed impairment.  20 C.F.R. § 404.1594(f)(2) (2005).  If the answer to step two is no, the third step asks whether there has been medical improvement.  20 C.F.R. § 404.1594(3) (2005).  If there has been medical improvement, step four considers whether the medical improvement is related to the claimant's ability to do work, *i.e.*, whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination.  20 C.F.R. § 404.1594(f)(4) (2005).  If there has been no medical improvement or the medical improvement is not related to the claimant's ability to work, step five considers whether any exceptions apply.  20 C.F.R. § 404.1594(f)(5) (2005).  Step six asks whether all of the claimant's current impairments in combination are severe.  20 C.F.R. § 404.1594(f)(6) (2005).  At step seven, a claimant's residual functional capacity is assessed and his/her ability to perform past relevant work is considered.  20 C.F.R. § 404.1594(f)(7) (2005).  At step eight, if a claimant cannot perform his/her past relevant work, the question becomes whether a claimant can perform other work.  20 C.F.R. § 404.1594(f)(8) (2005).

(T. at 13.)  This indicates that the ALJ considered steps two, three, and four.⁵  This is also a clear

indication that the ALJ followed the eight step sequential evaluation, rather than the five step

process, because consideration of whether a plaintiff's medical condition had improved or not is

not part of the five step process.  Further indication that the ALJ followed the eight step process

is his statement which clearly is based upon step four of that process:

> If there has been medical improvement, we must determine
> whether it is related to [the claimant's] ability to do work in
> accordance with paragraphs (b)(1) through (4) of this section; *i.e.*,
> whether or not there has been an increase in the residual functional
> capacity based on the impairment(s) that was present at the time of
> the most recent favorable medical determination.

20 C.F.R. § 404.1594(f)(4) (2005).

Although the ALJ cited the section of the Code of Federal Regulations (the

"Regulations") which sets forth the five step sequential evaluation, *i.e.*, 20 C.F.R. § 404.1520, he

also cited 20 C.F.R. § 404.1594, which is the provision setting forth the eight step sequential

evaluation.  (T. at 13.)  I conclude that the reference to 20 C.F.R. § 404.1520 was a typographical

error.

Furthermore, the ALJ analyzed and discussed the remainder of the steps in the eight step

process, *i.e.*, steps seven and eight.  (T. at 15-17.)  For example, finding that Plaintiff's

impairments were severe, the ALJ turned to assessing whether Plaintiff retained the residual

functional capacity to perform his past relevant work, which is step seven.  (*Id.*)  The ALJ found

that Plaintiff could only perform sedentary work, and thus he could not return to his former

---

⁵  Thus, the only step considered out of order was step six (step five was properly not considered because step five is only considered when no medical improvement is found.  20 C.F.R. § 404.1594(f)(5) (2005)).

employment.  (T. at 15.)  At the eighth and final step of the analysis, the ALJ examined whether Plaintiff could perform any other work.  (T. at 16-17.)

Thus, it is clear that the ALJ followed the eight step process.  While it is true that he referenced the provision of the Regulations which sets forth the five step sequential evaluation and discussed the step regarding severity out of order, his substantive analysis clearly shows that he followed the eight step process pursuant to 20 C.F.R. § 404.1594.

**B.     Whether the ALJ Erred Because He Did Not Hold the Commissioner to its Burden to Show Medical Improvement**

Plaintiff also argues that "the ALJ applied an inappropriate legal standard to impermissibly relieve the Commissioner of its burden of proving both medical improvement and an increase in residual functional capacity."  (Dkt. No. 11 at 13.)  Plaintiff's argument is based on the ALJ's statement that "[o]nce the claimant has established that he has no past work experience or cannot perform his past relevant work, because of his impairments, the burden shifts to the Social Security Administration to show that there are other jobs existing in significant numbers in the national economy that the claimant can perform, consistent with his residual functional capacity, age, education and work experience."  (T. at 16.)  Because in this context the ALJ appears to have shifted the burden to the Defendant after he found medical improvement, Plaintiff argues that the ALJ could not have placed the burden on Defendant to show medical improvement.  (Dkt. No. 11 at 12-13.)  The Government did not specifically respond to this argument.

Disability benefits may be terminated if there is substantial evidence to demonstrate that "there has been a medical improvement in the individual's impairment or combination of

9

impairments" and the individual is now able to engage in substantial gainful activity.  42 U.S.C. § 423(f) (2005).  The Commissioner has the burden of proof with respect to both of these issues. *See Mables v. Sullivan*, 812 F. Supp. 886, 888 (C.D. Ill. 1993) ("The Secretary's burden . . . is to show that medical improvement has taken place and is related to plaintiff's ability to work."); *Godwin v. Barnhart*, Civ. No. 04-2852, 2005 WL 1683538, at *8 (S.D.N.Y. July 18, 2005) (quoting *Glenn v. Shalala*, 21 F.3d 983, 987 (10th Cir. 1994) ("In proceedings to terminate benefits, the Commissioner 'has the burden of showing that a claimant has the ability to engage in substantial gainful activity.'"); 20 C.F.R. § 404.1594(a) (2005) ("Even where medical improvement related to your ability to work has occurred . . . we must also show that you are currently able to engage in substantial gainful activity before we can find that you are no longer disabled.").

Because the ALJ did not implicitly or explicitly indicate what burden each party bore at each step of the evaluation process and because this Court is recommending remand on other issues (*see* Sections IV.C., IV.D, IV.E..), the Court will recommend remand for clarification of the burden of proof at each step of the eight step evaluation.

## C.     Whether the ALJ Erred in Finding Plaintiff Capable of the Full Range of Sedentary Work, Despite an Inability to Bend and Frequent Deficiencies in Concentration

Because this is a termination of benefits case, the ALJ was required to assess Plaintiff's current ability to perform substantial gainful activity, "[t]hat is, [Defendant] will assess [Plaintiff's] residual functional capacity based on all [Plaintiff's] current impairments and consider whether [Plaintiff] can still do work [Plaintiff has] done in the past" or, based on Plaintiff's residual functional capacity ("RFC"), age, education, and past work experience,

10

whether he can perform other work.  20 C.F.R. § 404.1595(f)(7), (8).

Here, the ALJ found that Plaintiff was capable of performing sedentary work.  Plaintiff contends that the ALJ erred in this regard because Plaintiff's inability to bend and his frequent deficiencies in concentration significantly compromise his ability to perform sedentary work. (Dkt. No. 11 at 13-14.)  Defendant argues that there is substantial evidence to support the ALJ's finding.  (Dkt. No. 13 at 9-11.)  With respect to Plaintiff's ability to bend, I agree with the Defendant.

When the ALJ has determined that medical improvement has occurred, the Commissioner must then compare the claimant's functional capacity at the time of the most recent favorable medical decision to the claimant's RFC Assessment, based on current evidence, in order to determine whether the medical improvement resulted in an increase in the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1594(c)(3)(ii) (2005) and *Godwin v. Barnhart*, 2005 WL 1683538, at *8.

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a) (2005).

The medical evidence contained in the record substantially supports the ALJ's finding that Plaintiff could perform the full range of sedentary work, despite limitations with respect to his ability to bend.  Plaintiff cites three reports (from Drs. Rehmatullah, Greenky, and Ganesh) which, he argues, evidence his inability to bend, which in turn significantly erodes the sedentary

11

work base.  (Dkt. No. 11 at 14.)

      First, Dr. Rehmatullah's opinions are from Plaintiff's May 16, 1995 examination, prior to his surgery, and there is no medical evidence from Dr. Rehmatullah after March 6, 1996, the date of the most recent favorable medical decision.  Second, Plaintiff argues that Dr. Greenky's opinions, which post-date March 6, 1996, support the argument that Plaintiff was incapable of performing the requirements of sedentary work.  Dr. Greenky opined that Plaintiff had a "moderate level of permanent disability due to his lumbar spine."  (T. at 278, Dkt. No. 11 at 14.)  However, in that same report, Dr. Greenky also stated that he could not "by physical exam or by history and not by MRI, confirm by objective findings some reason that [Plaintiff] can't do a whole slew of potential jobs."  (T. at 278.)  Dr. Greenky stated that Plaintiff should not lift more than twenty pounds on a repetitive basis, but repeatedly lifting ten pounds was "okay."  (*Id.*)  Dr. Greenky also specifically noted that prolonged standing, sitting, and walking tended to irritate Plaintiff's back.  (*Id.*)  He did not, however, set any limitations or comment on Plaintiff's ability to bend or stoop.  Finally, Plaintiff cites to a report by Dr. Ganesh, who stated that flexion was limited to fifteen degrees in Plaintiff's thoracic and lumbar spine.  (T. at 266.)  Dr. Ganesh also went on to say that Plaintiff had a moderate degree of limitation with regard to, *inter alia*, bending.  (T. at 267.)

      The medical evidence does not show that Plaintiff is "incapable of bending."  While medical evidence does show that there is some limitation with regard to Plaintiff's ability to bend, "to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to one-third of the time, depending on the particular job)."  SSR 83-14: Titles II and XVI:

Capability to Do Other Work – the Medical-Vocational Rules as a Framework for Evaluating a

Combination of Exertional and Nonexertional Impairments *at* http://www.ssa.gov/OP_Home/

rulings/di/02/SSR83-14-di-02.html (last visited Sept. 6, 2005).  Accordingly, there is substantial

evidence that shows that despite his alleged inability to bend, Plaintiff is capable of performing

sedentary work.

 With respect to Plaintiff's frequent deficiencies in concentration, it is not as clear whether

Plaintiff can perform sedentary work.  This is because the ALJ's decision failed to contain any

discussion as to whether Plaintiff had any nonexertional impairments and if so, what impact thy

had on his ability to perform sedentary work.  As stated above, sedentary work involves strength

demands, such as a certain amount of lifting, sitting, walking, and standing.  20 C.F.R. §

404.1567(a).  In addition to these strength demands, there are other non-strength demands of

sedentary work which may be impacted by a claimant's nonexertional limitations.  SSR 83-14:

Titles II and XVI: Capability to Do Other Work – the Medical-Vocational Rules as a Framework

for Evaluating a Combination of Exertional and Nonexertional Impairments *at*

http://www.ssa.gov/OP_Home/rulings/di/02/SSR83-14-di-02.html (last visited Sept. 6, 2005)

("After it has been decided that an impaired person can meet the primary strength requirements

of sedentary, light or medium work . . . a further decision may be required as to how much of this

potential occupational base remains, considering certain nonexertional limitations which the

person may also have.")

 In this case, especially considering the medical evidence more fully discussed below in

Section IV.D., this Court cannot determine whether substantial evidence supports the ALJ's

finding that Plaintiff can perform the full range of sedentary work because the ALJ's decision

fails to discuss whether any nonexertional impairments exist and any possible effect they may have on Plaintiff's ability to perform sedentary work.  Accordingly, remand is recommended.

> **D.** **Whether the ALJ Erred in Relying on the Medical-Vocational Guidelines to Direct a Finding of Not Disabled Where There Exists Nonexertional Impairments That Pose Additional and Significant Limitations of Function**

Plaintiff argues that the ALJ erroneously relied on the Medical-Vocational Guidelines (the "Grid") because reliance upon the Grid is not permitted when a claimant suffers from nonexertional impairments.  (Dkt. No. 11 at 14-15.)  Defendant argues that Plaintiff did not have any significant nonexertional impairments, thus the use of the Grid was appropriate.  (Dkt. No. 13 at 14.)

It is well-settled that if a claimant suffers from exertional and nonexertional impairments, application of the Grid may not be appropriate.  *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996); and *Dombrowski v. Chater*, 960 F. Supp. 558, 567 (N.D.N.Y. 1997) (Scullin, C.J.).  Specifically, "if a claimant's nonexertional impairments 'significantly limit the range of work permitted by his exertional limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments." *Bapp*, 802 F.2d 605-06.  Thus the question becomes is there substantial evidence that Plaintiff did not have any nonexertional impairments. On the other hand, if there is substantial evidence showing that Plaintiff **did** suffer from a nonexertional impairment, then the inquiry turns to whether the nonexertional impairment would "significantly limit" Plaintiff's ability to perform sedentary work.  It is in this context that application of the Grid may or may not be appropriate.

14

Plaintiff alleges that he suffers from a nonexertional mental impairment[6] which results in deficiencies of concentration, persistence and/or pace. (Dkt. No. 11 at 14-15.)  In support of his argument, Plaintiff cites a psychological testing report completed by Thomas A. Lazzaro, Ph.D. (T. at 156-157), and a mental RFC Assessment completed and affirmed by non-examining Social Security Agency physicians (T. at 64-72).

Dr. Lazzaro examined Plaintiff on July 12, 1995 and administered, among other tests, an IQ test.  (T. at 156.)  Plaintiff's verbal IQ was 79; his performance IQ was 87; and his full scale IQ was 80.  (*Id.*)  Dr. Lazzaro stated that this put Plaintiff in the "low end of the Low Average range of intellectual functioning."  (T. at 157.)  Specifically, Dr. Lazzaro stated that Plaintiff's test results appear "to reflect the impact on his cognition of organically-based attending and concentration deficits that engender his learning disability."  (*Id.*)

On August 25, 1995, Dr. Hameed completed a mental RFC Assessment of Plaintiff.  (T. at 60-62.)  He indicated that Plaintiff was moderately limited in his ability to understand and remember detailed instructions and in his ability to be aware of normal hazards and take appropriate precautions.  (T. at 60, 61.)  In a "Psychiatric Review Technique" form, Dr. Hameed checked the box next to "[s]ignificantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22), or pervasive developmental disorder characterized by social and significant communicative deficits originating in the developmental period . . . ."  (T. at 68.)  In rating the severity of Plaintiff's impairment, Dr. Hameed stated, *inter alia*, that Plaintiff "**often**" had deficiencies of

---

[6]  Plaintiff again mentions his inability to bend as another nonexertional impairment.  However, this Court has found that substantial evidence supports the ALJ's finding that Plaintiff could perform sedentary work, despite his alleged inability to bend (*see* Section IV.C.).

concentration, persistence, or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere).  (T. at 71) (emphasis added.)  Dr. Hameed also opined that Plaintiff had a "slight" degree of limitation regarding his activities of daily living and his maintenance of social functioning.  (*Id.*)

In light of the above, it is unclear why the ALJ failed to discuss (1) whether Plaintiff had any nonexertional limitations, and if so, (2) whether they had any impact on his ability to perform sedentary work.  It is impossible for this Court to determine whether there is substantial evidence to support a finding of no nonexertional impairment or a finding that any nonexertional impairment did not significantly limit Plaintiff's ability to perform sedentary work, because the ALJ failed to discuss this entirely.  The ALJ's failure to discuss these issues was error because "certain intellectual and mental limitations can constitute non-exertional impairments affecting an individual's ability to work."  *Brown v. Commissioner of Social Security*, Civ. No. 00-1147, 2005 WL 1745655, at *4 (N.D.N.Y. June 30, 2005) (Sharpe, D.J.) (citing 20 C.F.R. § 404.1569a(1)).  In addition, the Second Circuit in *De Leon v. Secretary of Health and Human Servs.*, 734 F.2d 930 (2d Cir. 1984), held that the ALJ erred in ignoring a psychologist's findings that the plaintiff was of low intelligence and had a borderline level of social comprehension.  *Id.* at 935-36; *see also Gallivan v. Apfel*, 88 F. Supp. 2d 92, 98 (W.D.N.Y. 2000).  The Second Circuit went on to say "[s]urely a borderline IQ has a bearing on employability, even as a mop-pusher, porter, or maintenance man."  *Id.* at 936.

To be clear, the recommendation of remand by this Court should not be interpreted to be a finding regarding the existence of a nonexertional impairment.  This Court recommends remand because it is unclear whether the medical evidence based upon Plaintiff's mental and

psychological testing indicates a nonexertional impairment, and, if it does, whether it has any impact on Plaintiff's ability to perform sedentary work.  As a result, it is unclear as to whether the ALJ's reliance on the Grid was appropriate.

> **E.    Whether the ALJ Erred in Relying on a Disability Hearing Officer's Report of Disability Hearing Form as Explanation of Sufficient Evidence to Support the Findings Regarding the Plaintiff's Residual Functional Capacity**

Plaintiff argues that the ALJ erred in relying upon the decision of the DHO to support the finding regarding Plaintiff's RFC.  (Dkt. No. 11 at 15-16.)  Specifically, Plaintiff avers that because the DHO's decision does not contain a function-by-function analysis of Plaintiff's limitations, it is not substantial evidence.  (*Id.*)  In his decision the ALJ stated that there was sufficient evidence to support the RFC, as evidenced by "exhibit B7,"[7] which was the DHO's decision.  (T. at 16.)

The Court notes that other than Plaintiff's own statement of his limitations, the DHO's decision does not contain an assessment of Plaintiff's ability to perform work despite his physical and mental impairments.  20 C.F.R. §§ 404.1545(b), (c); *see also Mardukhayev v. Commissioner of Social Security*, Civ. No. 01-1324, 2002 WL 603041, at *5 (Mar. 29, 2002) (where the Court remanded the matter for the ALJ's failure to perform a "function-by-function" analysis of the claimant's capacity to do his past work pursuant to 20 C.F.R. §§ 404.1545(b), (c), (d)) and *Ferraris v. Heckler*, 728 F.2d at 585 ("[I]n making any determination as to a claimant's disability, the Secretary must explain what physical functions the claimant is capable of performing.")

In addition, the ALJ's reliance on the DHO's decision is unclear.  In his decision the ALJ stated there was "sufficient evidence to support the findings regarding the claimant's residual

---

[7]  Exhibit B-7 is found at pages 206 through 211 of the Administrative Transcript.

17

functional capacity at step 5, and that evidence is explained in the exhibit B7." (T. at 16.)  It is unclear what the ALJ is referring to since the fifth step of the five step process concerns whether a claimant can return to other work in light of his/her RFC and the fifth step of the eight step process concerns any exceptions to medical improvement that may apply.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1595(f)(5).  Determination of a claimant's RFC is step four of the five step process and step seven of the eight step process.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1595(f)(7).

As stated above in Section IV.D., this Court is recommending remand regarding Plaintiff's RFC, *i.e.*, to determine whether any nonexertional impairments exist, and if so, whether they limit Plaintiff's ability to perform sedentary work.  Upon remand, the Court presumes that in accordance with 20 C.F.R. §§ 404.1594(b)(4) and 404.1545, all record evidence will be properly weighed and considered in reassessing Plaintiff's RFC, in light of any nonexertional impairments that may exist, and that, in his decision, the ALJ will clearly state Plaintiff's RFC and cite the evidence he or she is relying upon in making the determination.

**F.      Whether the ALJ  Erred When He Found Medical Improvement**

Plaintiff argues that the ALJ erred in finding that there was medical improvement in Plaintiff's condition.  (Dkt. No. 11 at 17-20.)  Defendant contends that there is substantial evidence to support the ALJ's finding.  (Dkt. No. 13 at 8-9.)  On March 6, 1996, ALJ Chwalek found that Plaintiff was disabled as of January 10, 1994 due to a herniated disc and severe low back pain which significantly compromised the range of work which he could perform.  (T. at 182-186.)  On March 14, 2002, ALJ Volhard found that since ALJ Chwalek's decision was rendered, Plaintiff's back condition had improved and he could perform sedentary work.  (T. at

18

13.)

### 1.    Medical Evidence Prior to March 6, 1996

In finding Plaintiff disabled, ALJ Chwalek relied on medical reports from, among other

physicians, Brett Greenky, M.D., N. Rehmatullah, M.D., Daniel Elstein, M.D., and Niles F.

Greenhouse, M.D.  (T. at 183.)  Dr. Rehmatullah examined Plaintiff on May 16, 1995 and found

that Plaintiff had approximately sixty percent mobility of his back.  (T. at 154.)  Dr. Rehmatullah

also opined that Plaintiff was "unable to perform any manual work that would involve squatting,

bending, lifting, pushing and pulling, etc." and further stated that "[t]hese restrictions in all

probability are permanent."  (*Id.*)  Dr. Rehmatullah also stated that if not further intervention was

considered, Plaintiff's partial disability was permanent and mild-to-moderate in nature.  (T. at

154-155.)

Dr. Greenhouse completed a range of motion chart and physical RFC Assessment of

Plaintiff on July 12, 1995.  (T. at 160-169.)  Dr. Greenhouse's medical opinion was that Plaintiff

could lift and carry a maximum of five pounds; stand and/or walk for less than two hours per

day; sit for less than six hours per day; and that Plaintiff could not push or pull with his upper

extremities.  (T. at 168.)  On November 3, 1995, on a form used to prescribe medication, Dr.

Greenhouse wrote "Dirk has been 100% disabled from 12/10/93 to 11/3/95.  Dirk is 100%

disabled and will remain so for at least one year from now due to lumbar disc-neuropathy."  (T. at

175.)

On July 25, 1995, Plaintiff was examined by Dr. Elstein, who opined that Plaintiff had a

herniated disc at the L4, L5 level on the left.  (T. at 158.)  Dr. Elstein also remarked that "at the

present time, [Plaintiff] cannot stand for more than one hour at a time.  He cannot sit for more

than one hour at a time.  He has difficulty doing repetitious bending and stooping."  (T. at 159.)

Dr. Hameed, a non-examining SSA physician, completed an RFC Assessment of Plaintiff's physical abilities on August 25, 1995.[8]  (T. at 52-59.)  It was affirmed on the same date by a physician whose signature is illegible.  (T. at 59.)  Dr. Hameed found that Plaintiff could occasionally lift and/or carry up to ten pounds; frequently lift and/or carry less than ten pounds; stand and/or walk at least two hours in an eight hour work day; sit for a total of about six hours in an eight hour work day; and had a limited ability to push and/or pull in his lower extremities.  (T. at 53.)  Dr. Hameed also opined that plaintiff could occasionally climb, stoop, kneel, crouch, and crawl, but could never balance.  (T. at 54.)

Plaintiff was examined by Dr. Greenky on January 19, 1996, eight days after surgery was performed on his back; Dr. Greenky opined that Plaintiff remained totally disabled.  (T. at 178.)

### 2.      Medical Evidence After March 6, 1996

Kalyani Ganesh, M.D. conducted an orthopedic examination of Plaintiff on March 13, 2001.  (T. at 264-267.)  Plaintiff complained of pain in his lower back and shoulders and headaches.  (T. at 264.)  Dr. Ganesh's opinion was that Plaintiff had "mild-to-moderate degree of limitation to sitting, standing, walking, and climbing.  He has moderate degree of limitation to lifting, carrying, pushing, pulling, and bending."  (T. at 267.)  Dr. Ganesh conducted a physical examination of Plaintiff.  With regard to Plaintiff's cervical spine, Dr. Ganesh reported that Plaintiff had full flexion, extension, and lateral flexion bilaterally.  (T. at 266.)  Plaintiff also had full rotary movement bilaterally and while there was some cervical pain, there were no spasms.  (*Id.*)  Regarding the thoracic and lumbar spine, Plaintiff had limited flexion and rotational

---

[8]  The Court notes that Dr. Hameed's RFC Assessment was not referenced in the ALJ's decision.

movement.  (*Id.*)  Dr. Ganesh's impression was that Plaintiff had chronic lower back pain, "status post lower back surgery," and chronic upper back shoulder pain.  (*Id.*)  Dr. Ganesh's prognosis was "stable."  (*Id.*)

In an appointment on February 19, 2001, Dr. Greenky remarked that some central back pain was still present, "[b]ut not to the point now where it is disabling."  (T. at 261.)  This is in sharp contrast to his opinion in 1996, when he opined that Plaintiff remained totally disabled.  (T. at 178.)  Dr. Greenky also noted that Plaintiff was not taking any medication, nor was Plaintiff attending the pain management group.  (T. at 261.)  On the recommendation of his attorney, Plaintiff was examined again at a follow-up appointment on April 23, 2001.  (T. at 262.)  Dr. Greenky stated that Plaintiff was "at least partially disabled."  (*Id.*)  Dr. Greenky further stated that "[t]he real issue is what [the] degree of disability" is, and he opined that a MRI scan would assist him in making a more definitive diagnosis.  (*Id.*)

Sury Putcha, M.D., a non-examining Social Security Agency physician, completed an RFC Assessment on April 2, 2001.  (T. at 189-196.)  Dr. Putcha opined that Plaintiff could occasionally lift and/or carry up to twenty pounds; frequently lift and/or carry up to ten pounds; and sit, stand, and/or walk for about six hours in an eight hour day.  (T. at 190.)  Plaintiff also had the unlimited ability to push and pull, and could occasionally climb, balance, stoop, kneel, crouch, and crawl.  (T. at 190, 192.)

On August 10, 2001, Plaintiff was examined by Dr. Greenky for a check-up.  (T. at 278.)  Upon examination and review of a "recurrent" MRI scan, Dr. Greenky opined that Plaintiff had no recurrent disc herniation.  (*Id.*)  In response to Plaintiff's inquiry as to what restrictions were appropriate for work, Dr. Greenky stated that Plaintiff "can't and shouldn't lift more than 20

pounds on a repetitive basis.  10 pounds on a repetitive basis would be okay.  Prolonged standing and prolonged sitting, prolonged walking are all [sic] tend to irritate his back.  I can't, by physical exam or by history and not by MRI confirm by objective findings that he can't do a whole slew of potential jobs."  (*Id.*)  Dr. Greenky also remarked that "the bottom line here is that [Plaintiff] has some permanent disability in his lumbar spine secondary to the fact that he has had a laminectomy and he has **<u>subjective</u>** persistent symptoms but **<u>objectively</u>** there is [sic] not fixed neurological deficits."  (*Id.*) (emphasis added.)  Dr. Greenky felt that appropriate restrictions should be commensurate with Plaintiff's "moderate level of permanent disability."  (*Id.*)

###        3.        Analysis

Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision[9] that you were disabled or continued to be disabled."  20 C.F.R. § 404.1594(b)(1) (2005).  "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairments (see § 404.1528)."  *Id.*  The term "symptoms" is defined by the Regulations as the claimant's own description of his/her physical or mental impairment.  20 C.F.R. § 404.1528(a) (2005).  The Regulations further state that a claimant's statements alone are not sufficient to establish a physical or mental impairment.  *Id.*  The term "signs" is defined as "anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements

---

9   "The most recent favorable medical decision is the latest decision involving a consideration of the medical evidence and the issue of whether you were disabled or continued to be disabled which became final."  20 C.F.R. § 404.1594(b)(7).  In this case, the date an ALJ last determined that Plaintiff was disabled was March 6, 1996.  (T. at 182-186.)

(symptoms).  "Signs must be shown by medically acceptable clinical diagnostic techniques."[10]

20 C.F.R. § 404.1528(b) (2005).  "Laboratory findings are anatomical, physiological, or

psychological phenomena which can be shown by the use of medically acceptable laboratory

diagnostic techniques.  Some of these diagnostic techniques include chemical tests,

electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological

studies (X-Rays), and psychological tests."  20 C.F.R. § 404.1528(c) (2005).

Plaintiff argues that there was no medical improvement because the "disability rating

provided in 1995 by Dr. Rehmatullah" (that Plaintiff had a mild to moderate disability) "is

similar to, if not less severe than, the rating provided by Dr. Greenky on August 10, 2001" (that

Plaintiff had a moderate level of permanent disability.)  Dkt. No. 11 at 18.  To the extent that

Plaintiff's argument hinges on the "disability ratings" of Drs. Rehmatullah and Greenky, *i.e.*, that

Plaintiff's "disability rating" **increased** in severity, thus there could not have been medical

improvement, Plaintiff's argument is not persuasive.  The Regulations clearly state that in

determining whether there has been medical improvement or not, any changes in the severity of

the impairment must be based on changes in the symptoms, signs and/or laboratory findings (as

defined above).  It is unclear, and Plaintiff does not explain how, or whether, "disability ratings"

constitute symptoms, signs and/or laboratory findings.  Thus, the Court declines to recommend

---

[10]  In addition, the SSA's Program Operations Manual System ("POMS") further distinguishes signs from symptoms in a few ways.  "First, signs are more difficult for the individual to fashion or control.  Second, there are distinctive, characteristics signs that clinicians repeatedly associate with particular symptoms.  Third, signs can be observed by the clinician or can be elicited in response to a stimulus or action by the clinician.  Fourth, they require professional skill and judgment to evaluate their presence and severity as opposed to the mere noting and reporting of an individual's statements."  SSA Policy Site: POMS Section DI 24501.020, http://policy.ssa.gov/poms.nsf/lnx/0424501020 (last visited Nov. 3, 2005).

remand on this basis.

To the extent that Plaintiff's argument is based on the symptoms, signs and/or laboratory findings, this argument is also unpersuasive.  The Court's review of the medical evidence, as summarized above (*supra* at section IV.F.1 and IV.F.2), clearly shows substantial evidence to support the ALJ's finding that there was medical improvement in Plaintiff's condition.  For example, after Plaintiff's surgery, Dr. Greenky noted that an MRI showed no recurrent disc herniation.  (T. at 278.)  Furthermore, Dr. Greenky also noted that Plaintiff had **subjective** persistent symptoms, but **objectively**, he found no fixed neurological deficits based upon his physical exam of Plaintiff or the results of the MRI.  (*Id.*)  Furthermore, prior to his surgery, Plaintiff was receiving epidural blocks (T. at 130-131), attending physical therapy (T. at 132-147), and taking various medications, including Relafen, which were prescribed because of Plaintiff's back pain.  (T. at 128.)  After his surgery, Dr. Greenky noted, on February 19, 2001, that Plaintiff was not taking any prescription medication, and that he was not attending the pain management group.  (T. at 261.)  Additionally, there were increases in Plaintiff's RFC Assessment, meaning Plaintiff was capable of performing more work-related activities. (*Compare* T. at 160-169 *with* T. at 189-196.)  For example, prior to ALJ Chwalek's decision, Dr. Greenhouse opined that Plaintiff could lift and carry five pounds and stand and/or walk for less than two hours per day.[11]  (T. at 168.)  In 2001, after his back surgery, Dr. Putcha found that Plaintiff could occasionally lift and/or carry up to twenty pounds and frequently lift and/or carry

---

[11]  Dr. Greenhouse's RFC Assessment was based upon his monthly treatment of Plaintiff as well as various laboratory findings, which he stated were enclosed with his report.  (T. at 160, 162.)  These laboratory findings appear immediately after the RFC Assessment.  (T. at 160-177.)

up to ten pounds.[12]  (T. at 190.)  Dr. Putcha also opined that Plaintiff could sit, stand, and/or walk for about six hours in an eight hour day.  (*Id.*)

Accordingly, the medical evidence contained in the record provides substantial evidence to support the ALJ's finding that Plaintiff's impairments had medically improved.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[13] for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: January 4, 2006
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

[12]  Dr. Putcha's RFC Assessment was based upon the various treatment notes from Plaintiff's treating physician as well as the other medical evidence contained in the record.

[13]  Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2005).